17-2093 Western Missouri David Faltermeier et al. v. FCA US LLC Thank you, Ms. Andrews. We'll hear from counsel. Mr. Moore? Yes, sir. Good morning. You may proceed.  The district court erred in finding that it had jurisdiction under the Class Action Fairness Act because the necessary amount in controversy does not exist in this case. That amount in controversy is comprised of two elements here, compensatory damages and attorneys' fees, and cumulatively these amounts do not exceed the $5 million threshold necessary for the exercise of federal jurisdiction. On this issue, there should be no dispute that it is a preponderance of the evidence standard that applies, as the Supreme Court made clear in Dart-Cherokee, and also that it's FCA's burden to prove that a sufficient amount in controversy exists. I'd like to begin by discussing compensatory damages. There's evidence in this case of lost fair market value of the Jeep vehicles, and as the district court pointed out, that evidence suggests that if the price of these vehicles that were allegedly misrepresented is zero, the amount of damages would be over $50 million. And FCA points out repeatedly that that evidence is uncontradicted. But I would point out that there is also uncontradicted evidence in this case of the cost of what it would take to repair those Jeep vehicles to bring them into conformance with FCA's representations of safety and non-defectiveness. That evidence is also uncontested, and at most, that evidence is $3.6 million, which falls well short of the $5 million threshold necessary for federal jurisdiction. As the record stands, then, as you take that evidence and you filter it through Missouri law, compensatory damages in this case are no more than $3.6 million. And it's a function of Missouri law to determine how the amount in controversy should be valued and what evidence you should look at. And in the Brown v. Bennett case and the Farning case, which are cited and discussed in our briefs, Missouri makes very clear that when you have a misrepresentation and you have a benefit of the bargain model that applies, and you have the ability to repair whatever was the subject of that transaction to bring it into conformance with the representations, and that cost of repair is lower than what the diminution in value of the property is, then you have to apply the cost of repair as the measure of damages. Because if you don't, if you award the higher amount for diminution in value, you give the plaintiffs in that scenario a windfall. And obviously Missouri, like virtually every other state in the nation, says a plaintiff can't recover a windfall. Well, is an element of the diminution of value, the reduced value, resulting from the disparagement of the product such that its reputation has been damaged on resale under Missouri law, or has that been rejected? Well, it certainly would be a possible measure of damages in certain circumstances. FCA cites the Hope case, which talks about a stigma applied to these vehicles. And I'll be quite frank, our petition alleges a stigma as well. But what it also alleges is it alleges diminution in value, stigma, and cost of repair, all as potential alternative measures of damage just to make sure that we covered the benefit of the bargain entirely. But what the case law tells you is that when you have a cost of repair that can bring the products into conformance with the representations, then it would be the ceiling on damages that could be recovered. So if there was a stigma damage, and the stigma damage or the diminution in value happened to be less than the cost of repair, then arguably it would apply in this case. But that still doesn't answer the jurisdictional question because the cap on damages is the 3.6 that is the cost of repair. So what you're arguing is that essentially that even if stigma damages were recovered, it couldn't be recovered in excess of 3.6 million because Missouri law effectively requires that the cost of repair be the applicable measure of damages in cases of this sort. That's absolutely correct. Yes, stigma is basically a proxy for diminution in value, and it cannot be recovered if the repair cost is less. This court made clear in its decision in Clayton that under the benefit of the bargain rule, that diminution in value and repair cost damages are not cumulative measures of damages, that they are alternative measures of damages. And Farning and the Brown case from the Missouri courts say that you apply the lesser of those. Farning is also important because Farning says that repair costs in this circumstance where you're talking about bringing a product into conformance with the representation cannot be characterized as consequential or incidental damages, which answers FCA's argument that we could be able to recover diminution in value and cost of repair. If cost of repair is not a consequential or incidental damage, it cannot be recovered in addition to diminution in value. It is an alternative measure. And as I just discussed, there is a clear indication in the petition that repair damages are in play. They are alleged in the damages paragraph of the petition saying that consumers are put in the position of having to pay for repair costs to these vehicles. There was evidence that was included in the remand record about what that cost of repair would be, and at max it's $3.6 million, and it is uncontroverted. We've cited case law from Missouri courts indicating that repair costs are applied in auto defect cases, and I would also submit to you that the evidence that exists in this case from the plaintiffs about repair costs distinguishes this case from other situations where this court has held that remand was not appropriate. In the Raskis case, for example, the plaintiff never provided any information about the amount of medication that had been thrown away by consumers that allegedly supported the measure of damages. In the Hargis case, this court noted that there was no evidence from plaintiff about the size of a nationwide class, and in the recent case that this court decided in Daman, the court said that remand was not appropriate because there was no evidence of the amount that the plaintiff class would have paid in insurance premiums, and here we have that contradictory evidence. We have that evidence of repair costs that sets a different measure of damages from what FCA outlines in its notice of removal and argues in its remand briefs. The cop decision by this court says that an amount that is demanded is not in controversy if it cannot legally be awarded by a jury, and in this case that means no more than $3.6 million in compensatory damages. Now, that brings us to the issue of attorney's fees, and there are two points here, one being that there is no evidence in the record to close the gap between $3.6 million and the $5 million needed to find federal jurisdiction because there is no evidence at all submitted by FCA to suggest what an attorney's fee award would be, let alone that a fee award would reach $1.4 million or more necessary to reach the jurisdictional threshold. There is a citation to the Barry v. Volkswagen case where $6 million was awarded. I won't go through the math again, but we've broken down in our brief why that's not an apples-to-apples comparison with this case, and in fact when you compare those two on their facts and on their complexity, it's obvious that this case is a lot less complex and a lot less factually intense and that the amount of a fee award at the end of the day would be significantly less than Barry. We believe under the preponderance standard that it is FCA's burden to show that those two cases are similar enough that a $1.4 million award of attorney's fees or greater could be awarded in this case, and they haven't done that. But I think the easier answer for this court is that there is a stipulation in the record from counsel that says that we will not accept a fee award of any greater an amount that would put this case over $5 million in controversy. In this case's decision in Roll Wing, it cited Missouri law, it cited a Missouri stipulation in state court made by counsel to the effect of we will not accept a fee award to exceed the amount in controversy, and it held that that stipulation was enforceable as a matter of judicial estoppel under Missouri law. The later decision of the Supreme Court in Standard Fire held on a different issue that stipulations of class representatives were not enforceable because the persons that they were trying to bind, i.e., the putative class members, were not in the case. That problem does not exist with respect to a stipulation of counsel. Our firm is in the case. We're the only counsel of record. We've made the stipulation, and as far as Missouri law goes and as far as this court decided in Roll Wing, that stipulation is effective. Now, if that situation were ever to change, if different counsel were appointed or if we terminated or withdrew from the case, that would create a different situation where removal jurisdiction could be assessed at that time, just like if punitive damages aren't originally pleaded in the petition but later make their way into the case, you can remove later at that time if the amount in controversy is sufficient. You know, there's a lot of debate in the papers about whether or not Roll Wing is still good law, and I think the answer is clear that it is. The Supreme Court in standard fire expressly did not reach the issue of attorney's fee stipulation and left that portion of the Roll Wing decision untouched. As far as punitive damages are concerned, they've not been pleaded in the petition. That is undisputed. The Hurst case from this court and the more recent decision, Judge Shepard, that you were on the panel of in Waters v. Ferrara Candy, again, makes clear that as a matter of Missouri procedural law, if punitive damages are not pleaded, they do not count in the amount of controversy. And so with those two measures, compensatory damages of no more than $3.6 million and attorney's fees that do not exceed $1.4 million, and even if they did, would be capped by stipulation, there is not a sufficient amount of controversy for federal jurisdiction to exist. I'd like to briefly touch on the court's summary judgment order, which we also believe is erroneous, and if the court finds jurisdiction, we would ask that that summary judgment ruling be reversed. The district court required that the plaintiff be exposed to the representations made in the press releases that are at issue in this case, and the district court required that the representations in those press releases be, quote, passed down the transaction chain from FCA to the car dealer to the plaintiff when he bought his vehicle, and the district court required that those representations color the transaction, meaning influence the transaction the plaintiff made for his vehicle, and all of those requirements are inconsistent with Missouri law, which says that the Missouri Merchandising Practices Act is intended to liberalize what would otherwise be a stricter fraud standard, doesn't require privity of contract, doesn't require reliance, and doesn't require transaction causations. The Gibbons case that we cite in our briefs is a good example of how indirect misconduct, indirect representations, or indirect concealment by a party upstream can still support liability, which is exactly what we have in this case. We have a public safety issue. NHTSA issued a recall. FCA came out and, we allege, misrepresented the vehicles that were subject to that recall as safe and non-defective, and they spread that message to the entire general public, propping up the market for these vehicles. Our client bought a vehicle after that. He's now in a position where he's required to add a steel fuel tank shield to bring that vehicle into conformance with the representation, meaning a safe, non-defective vehicle that won't blow up in a fireball when it's struck in a rear impact collision, and all of that fits neatly within the parameters of the MMPA and allows our client and the class of consumers who have bought these vehicles to recover under the Merchandising Practices Act. If there are no more questions, I will reserve the rest of my time for rebuttal. Very well. You may do so. Good morning, Counsel. You may proceed. Thank you, Your Honor. May it please the Court. Kathy Wisniewski for FCA U.S. Plaintiff conveniently ignores the facts of this case. The facts of this case are what was pled at the time of removal, and was it legally possible for the plaintiff to collect the difference in value damages that he admits would grossly exceed the court's jurisdictional threshold? What was pled at the time of removal was that it was a design defect. The gas tank being behind the rear axle was a lethal consequence of the design of these vehicles. He said it was defective because it was plastic. It hangs below the bumper. The frame is weak. It was a design defect case. I'd like the Court to look at this in reverse and imagine a plaintiff who claims they bargained for a certain product. We'll use this product. A safe vehicle. And says, I later found out that just by the way that it's designed, because it has a vital component put in a certain place that could cause me to die, I would never have bought that had I known this. This is what he pled. I never would have bought that vehicle if I had known of that. And, therefore, I'm entitled to the difference in value. Would we let a defendant say, well, here, let me put a Band-Aid on that? Maybe you wanted a differently designed vehicle and maybe you never would have purchased this, but we can put a Band-Aid on that and make it all better. And your damages can only be measured by the cost of the Band-Aid that you might never even apply to the vehicle because you haven't gotten it yet. That's what he's asking this Court to find. And that's what this Court will find if it agrees with the plaintiff. He's arguing, essentially, that the cost of repair is a measure of damages, that if it is less than the other measure of damages, as a matter of law, it cannot be recovered. Is he wrong there? He's wrong on the law. All right. Totally wrong on the law also. The law is, first, and I go back to the facts, if I could, Your Honor, at first, because he never pled this cost of repair. At the time of removal, he did not ask for repair costs. He never asked for the lesser of. He pled, he had exactly three paragraphs that mentioned what damages he wanted. The first one was paragraph four, said deprived of the benefit of the bargain in purchasing. The second one was paragraph 32. He was deprived of the benefit of the bargain by purchasing due to being told it was safe and not defective, and it was, in reality, worth less than a vehicle that was safe and defective. He pleaded in that paragraph that it places a stigma on the vehicle. In paragraph 44, he pleaded that he suffered an ascertainable loss of money under the benefit of the bargain theory by paying more for his Jeep than those products that were worth more if they had not been misrepresented. The only reference in the entire petition at the time of removal was in paragraph 32 after he pleaded about how he had been deprived of benefit of the bargain by paying too much. He said, and I quote, the ineffectiveness of defendant's trailer hitch repair also places consumer in a position of bearing the cost for alternative repairs. The pleading was, you did a repair to my vehicle that didn't work, and now I'm going to have to repair that repair. Not that that was the solution for the design defect. He never mentioned the skid plate remedy that he came up with until his reply brief in support of remand. And then he mentioned a blog, and he said, well, this blog says that I could just get a skid plate for $320. So that's the factual background. He's wrong on the law. This court, and I apologize to the court, but I don't believe this is cited in anybody's brief. The definitive ruling of this court is in Grabinski versus Blue Springs. 136 F third 565 at page 570. And I quote, this was a somewhat similar case. It was a misrepresented vehicle, said it was an excellent condition when it really had been sold for scrap and rebuilt. The plaintiff paid $5,500. The verdict was for, the affirmed verdict was for $7,835, more than the man paid. And here's how this court reasoned that. At a minimum, Mr. Grabinski was entitled to the difference between the actual value of the property and what its value would have been if it had been as represented. Here, plaintiff's expert testified that the Jimmy was worth $2,500 to $3,000, but would have been worth $8,000 as represented. Mr. Grabinski was also entitled to recover other expenses, of which there was evidence, including interest charges, repair costs, lost time from work, excessive gasoline costs, towing charges, and other costs relating to problems arising from the fraudulent transaction. And that is, that's the definitive ruling. But if we look at Missouri law, it's in accord. But you say that case is not in any of the briefs? That's correct, Your Honor. Why don't you, under our rules, 28J, send us a copy with a copy to counsel? Will do, Your Honor. There's, under Missouri law, and I quote, this isn't a fraud case. Plaintiff keeps citing breach of contract cases, which have nothing to do with this case. He did not plead a breach of contract claim. In Missouri, the Missouri courts have said, and I quote, a victim of fraud has two options. He can return what he purchased and get his money back, or keep what he purchased and sue for the benefit of the bargain. The benefit of the bargain is the difference between the value as represented and the true value as of the date of purchase. In Morehouse, which I believe plaintiffs cited, the court said, in fraud cases, the courts of this state are committed to the benefit of the bargain rule as a method of arriving at damages. Applied to a transaction involving the sale of an automobile, it allows the defrauded party to be awarded the difference between the actual value of the property and what its value would have been if it had been as represented. Applying that rule to the present case, Morehouse, if successful in her claim, would be entitled to the difference in the value of the brand as represented by Beelman and the actual value of the band when she purchased it. It's the plaintiff's option, and he pledged for the option of difference in value damages at the time of removal. He can't change that so he can avoid removal to federal court. As far as the stipulation, you know, if we have to get to the 3.6, which is also undisputed, as far as the stipulation goes, this court has three times recognized the abrogation of Rowling. Three times. The Knowles Court, the United States Supreme Court, didn't reach the stipulation on attorney's fees issue because it wasn't even pleaded in the complaint at issue. That's what they said, we're not going to address that issue because it wasn't even pleaded in the complaint here. They didn't say that a stipulation on attorney's fees would, of course, save you from federal jurisdiction. And there's good reason that an attorney fee stipulation should never save anybody from federal jurisdiction. The reason number one is, and very important, such a stipulation creates an inherent conflict with the class. In a class action enforcing this, what does this do? This incentivizes a lawyer to get less for the class so he gets more in fees. If the total amount awarded is capped below $5 million, he's instantly incentivized to settle this for less and ask for more in fees. Secondly, the other policy reason is you have to rewrite the MMPA. The MMPA awards attorney's fees to the prevailing party, not to the attorney. Suddenly we're saying an attorney can decide whether the party to the case accepts less in attorney's fees. There's just simply no law to support the validity of that stipulation after the Knowles opinion. And as far as the summary judgment ruling, Your Honor, I would just ask the court to focus on the facts of this case once again. In June of 2013, Chrysler had a dispute with a government agency about whether these vehicles had a defect and should be recalled. There was a lot of publicity about it. Chrysler made some statements and took a stand that it wasn't defective. Two weeks after these statements appeared, Chrysler relented and agreed to recall the vehicles. Plaintiff has said, and I would point the court to ECF 148, page 14 of 37, paragraph 8. Plaintiff pled at the summary judgment stage that it was an uncontested fact, and I quote, By agreeing to recall the Jeep vehicles, FCA indicated by definition that the vehicles posed an unreasonable risk of death or injury in an accident. Effectively, what the plaintiff is saying is in June, FCA issued some statements that weren't true. But then by recalling the vehicles, it acknowledged that it had issued erroneous statements. It wasn't even until two months later that the plaintiff bought his vehicle. I mean, we can put aside the fact that he never saw the statements when he bought his vehicle or before. But by then, the statements had been corrected. The plaintiff admitted at deposition that months later when he got the recall notice and started reading about the situation, everything that he read had two viewpoints, Chrysler's viewpoint and Nissa's viewpoint. And that when he read these, he knew that he could either accept Chrysler's viewpoint or he could accept the Nissa's viewpoint. What he decided to do was send the articles to his attorney. And if the court will excuse me, I'm on some medication and it's drying my mouth. My apologies, Your Honor. So he sends these to his attorneys. And what his attorneys do is they dig up some other articles and show him. He admitted every article that he saw and sent to his attorneys had two viewpoints. They dig up some other articles and he admits the first time he ever saw them was when his attorney showed them to him. And that's where these allegedly false statements occurred. This is months after he purchased his vehicle. He never read these things. He didn't consider them. They have no effect on his purchase of this vehicle. We don't just impose liability under Missouri law because a lawyer shows you something that they think is wrong. And suddenly you can say, well, that affected my sale months ago. You know, there's a body of law that talks about reliance. And there's a body of law that talks about connection with. And if you look at Judge Kaye's opinion and how it lays out kind of sequentially as to what wasn't passed on and what was, and what was, you know, it kind of has to sound that it might be reliance. It also might be an explanation why it was not in connection with the sale. I would like you to tell me why Judge Kaye's has that piece of it right. Well, reliance is I saw it, I looked at it. And my mindset was that's important to me and I'm going to make my decision based upon that. In connection with the sale, you may not have relied upon it at all. You may not have made that decision, but that was part of the sale. That was part of the agreement of the parties, part of the, you know, the basis for the bargain basically. And when the basis for the bargain turns out not to be fulfilled, as in the loan cases that are really the only cases that have dealt with after the fact misrepresentations, when, you know, when that happens not to be fulfilled because there are later representations, then it relates back to the original transaction and what happened. Here we have a transaction that was complete at the time of sale. I mean, there were no ongoing obligations. There was nothing that would allow me to say, well, hey, I'm not going to do that now, which would be in connection with it. If I had sold them an extended warranty and I said, if you buy this extended warranty, I'll fix your tires for life. And then when the time came, I said, no, not really. Well, now that's in connection with, I bought that in connection with my vehicle. I didn't, I honestly have a very hard time figuring out in my mind how something can be in connection with a transaction when you never saw it. It had nothing to do with the bargain you struck at, you know, when you did your transaction. So I have a difficult time trying to explain why the, you know, in connection situation applies any better than that. Well, in connection, as opposed to reliance, might be a situation in which they hand you 14 pages of boilerplate, which, you know, you've never read and you could not have relied upon it because you didn't read it, but it was there. And that may be something in connection with the sale. Right. Totally agree. And so we think that that that's clearly something that's covered. The question really is the the point is the courts are talking about this. Well, you don't even know about it. It might arise later. And so why is this not in connection with the sale? Because it had nothing. It wasn't there at the time. I mean, it wasn't in a document. Neither he nor the seller even, you know, thought about it, made it a part of. It's not in. It's not something that the parties was part of the bargain. That's why I keep going back to the basis of the bargain. Whether you read it or not, something can be the basis of the bargain. You know, the terms may be in a lengthy contract while you talk. That's basis of the bargain, whether I read them or not. That's in connection with. This had nothing to do at all with it, with a transaction that took three hours, was totally completed within three hours, had no ongoing obligations whatsoever. And this occurred months later. Just one other point. You know, we also have the as a result of. But I think even maybe more critical than that is the ascertainable loss. We were at the summary judgment stage, summary judgment. And, you know, we argue that he had no ascertainable loss. He bought a vehicle. He paid. I don't remember. Fifty nine hundred dollars, if I remember correctly. He didn't ever show any evidence. We challenged him to show evidence that what he paid was was more than what that vehicle was really worth. He came forward with no evidence. Otherwise, all he did was come forward and say, well, here, a skid plate cost three hundred and twenty dollars. Well, so what a skid plate is an option I can go by. That doesn't mean when you paid fifty nine hundred dollars, you paid too much for that vehicle as represented, which is exactly what you have to show to show damages under the MMP. Thank you. Very well. May police court your honors. I would respectfully disagree with the conclusion that we did not plead repair damages. And I would point the court to paragraph two of the petition, which is on page thirty three of the joint appendix. And it says that these vehicles are dangerous because they are made without sufficient protection or structural support to withstand rear impact collisions, which is exactly what our theory of repair says, is that you add that structural support through a shield and you make these vehicles safe. You make them non-defective. You make them conform to FCA's representation. And then, of course, paragraph thirty two says the ineffectiveness of the trailer hitch repair also places consumers in a position of bearing the cost for alternative repairs. And the trailer hitch, as discussed in the petition, is FCA's and NHTSA's agreed to remedy for this safety issue. So we're not suggesting that you have to repair the repair. We're suggesting that you have to repair the vehicles in a different way to make them safe and non-defective as FCA represented. With respect to the Grabinski case, when it is submitted, I believe we'll have a chance to respond. I will elaborate on it then. But I will point out that the damages that were incidental in Grabinski were for problems arising from the fraudulent transaction after the fact, which are different. Those are incidental and consequential damages. They are not damages to repair the misrepresentation in the first place, which is what Farning says cannot be considered incidental and consequential damages. So it is an apples to oranges comparison. What about her argument that in fraud cases where there's a misrepresentation and an affirmative false statement, that the measure of damages is the diminution of value because you're supposed to get the full benefit of your bargain as opposed to the ordinary contract case? Is she wrong on that? She is, with all due respect. But the measure is always the benefit of the bargain. The question is how you measure the benefit of the bargain. And in most cases, the benefit of the bargain is measured by diminution in value. But the Brown case and the Farning case that we cite and the Camden case and a couple of others talk about under the benefit of the bargain rubric that when you can repair that piece of property to the place that it was represented in the first place, it's that cost of repair that applies so that you don't get a windfall. So those cases take into account diminution in value. They take into account the misconduct. And they don't want to give consumers a windfall. With respect to the summary judgment arguments, I think they're fully briefed. And I'm running out of time. But I will say the last point is that if you don't allow a theory like this, you're letting a defendant get away with market-wide representations to the general public as a whole, which are arguably worse than any specific representation to any specific consumer. And the statute covers those misrepresentations and doesn't require direct transactions. Thank you. Very well. The case is submitted, and we will take it under consideration.